**In re CONTINENTAL PROPERTIES, INC., Debtor.**

**TRAVELODGE INTERNATIONAL, INC., Plaintiff,**

**v.**

**CONTINENTAL PROPERTIES, INC., Defendant,**

**M & Associates, Inc. and Frederick D. Muir, Jr., Intervenors,**

**Orison Oi Sun Pang and Esther Lee Pang, Intervenors,**

**Wataru Watanabe and Violet Takiko Watanabe, Intervenors.**

**Bankruptcy No. 81–0090.**

United States Bankruptcy Court, D. Hawaii.

Nov. 16, 1981.

Francis T. O'Brien, Honolulu, Hawaii, for defendant.

Leslie W. S. Lum, Honolulu, Hawaii, for Pangs.

Kinji Kanazawa, Honolulu, Hawaii, for Muir.

James H. Lawhn, Honolulu, Hawaii, for plaintiff.

Arthur K. Goto, Honolulu, Hawaii, for Watanabe.

JON J. CHINEN, Bankruptcy Judge.

On August 17, 1981, Travelodge International, Inc., hereafter "Plaintiff", filed a Complaint for Relief from Automatic Stay. A preliminary hearing was held on September 8, 1981, whereupon the matter was set for final hearing. The final hearing on the complaint was heard on October 9, 1981, at which time James H. Lawhn appeared on behalf of the Plaintiff; Francis O'Brien represented Continental Properties, Inc., hereafter "Debtor"; Arthur K. Goto represented Wataru and Violet Takiko Watanabe; Sidney Kanazawa represented Frederick D. Muir, Jr., and M & Associates, Inc.; and Michael Lum represented Orison Oi Sun and Esther Lee Pang.

At the final hearing the issues presented before the Court were as follows:

A. What is the nature of the Settlement and Extension Agreement? Is it an option or a contract for the sale of an interest in land?

B. What is the effect of the filing of the bankruptcy petition on the Settlement and Extension Agreement?

C. If this is a contract for the sale of an interest in land, is there equity in the property? If so, when should Debtor be required to assume or reject the executory contract?

Based upon the arguments of counsel, the evidence adduced, and the memoranda and records filed herein, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The Debtor filed a voluntary petition under Chapter 11 on July 31, 1981.

2. On August 17, 1981, Plaintiff filed a Complaint for Relief from the Automatic Stay based on the grounds that the Debtor no longer had any interest in the property which was the subject of a "Settlement and Extension Agreement" dated February 13, 1981, hereinafter referred to as the "Agreement". More specifically, Plaintiff filed its complaint to determine that:

a. Neither the Debtor nor its estate has any rights in the Agreement or the property described therein and that the automatic stay be annulled as to said Agreement; or

b. If Debtor or its estate has rights in the Agreement or the property described therein, that said Agreement is an executory contract, the adequate protection and assurance be provided, and that said Agreement be accepted or rejected on or before September 15, 1981.

3. At the pre-trial and preliminary hearing held on September 8, 1981, this Court granted the Motions to Intervene filed by Wataru and Violet Takiko Watanabe and Orison Oi Sun and Esther Lee Pang, the fee owners of the Waikiki property described in the Agreement. The Court also allowed Frederick D. Muir, Jr. and M & Associates, Inc. to intervene as third-party plaintiffs. These parties will hereafter be referred to as "Intervenors".

4. Prior to the Settlement and Extension Agreement the individual parties had entered into the following agreements with the Debtor:

a. Deposit Receipt, Offer and Acceptance, hereafter "DROA", dated October 3, 1978, between Travelodge, as seller, and Debtor, as buyer relating to the Waikiki Pacific Isle Hotel. (Exhibit T–2)

b. DROA dated October 3, 1978, between Travelodge as seller, and Debtor, as buyer relating to the Hilo Pacific Isle Hotel. (Exhibit T–1)

c. Agreement effective June 1, 1980 between Debtor as buyer and Pang and Watanabe, as sellers relating to the fee simple interest subject to the lease to Travelodge in real property on which the Waikiki Pacific Hotel is constructed. (See Exhibits WP–1, WP–2 and WP–3).

d. Agreements dated October 27, 1980, between M & Associates, Inc. and Frederick D. Muir, Jr. as seller, and Debtor, as buyer relating to the purchase of all the issued and outstanding capital stock of M & Associates, Inc. (Exhibits M–2 and M–3).

5. After substantial litigation in the state court concerning prior contracts and disputes between the parties with respect to the real property located at 1850 Ala Moana Boulevard and the Hilo Pacific Isle Hotel, the parties entered into the Settlement and Extension Agreement dated and signed on February 13, 1981, in order to resolve all disputes and to extend the closing date.

6. Under the Agreement, closing was to take place on or before the close of business on July 31, 1981.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1471.

A. *What is the nature of the Settlement and Extension Agreement?*

1. The parties have agreed and the Court finds that the Agreement is clear and

# 735

unambiguous on its face, therefore, extrinsic evidence is unnecessary to determine the intent of the parties.

2. The DROA for Hilo Pacific Isle Hotel (T–1) and the DROA for Waikiki Pacific Isle Hotel (T–2) contain provisions regarding the mutual obligations of the parties and the various remedies available for the Buyer and Seller. Both of these DROAs were entered into on October 3, 1978.

3. Under each DROA if the Buyer failed to complete the purchase, the Seller could bring an action for damages for breach of contract, or tender conveyance to Buyer and sell for the balance of the purchase price, or retain all deposits as liquidated damages. In the event the Seller failed to perform its obligations the Buyer could bring an action for damages for breach of contract or sue the Seller for specific performance.

4. The subsequent Agreement dated February 13, 1981, modified the remedies of the parties under the DROAs. Paragraph 2.6 of the Agreement provides remedies for the parties in the event of failure to close:

2.6 *Failure to Close.* If Continental should fail [to] perform all acts or obligations required on its part to close under any of the Agreements listed in paragraph 2.3 on or before July 31, 1981, Continental shall immediately forfeit the deposits, if any made under each of such agreements (including the deposit referred to in paragraph 3.1) as liquidated damages and *no Mutual Party shall have any further claim or cause of action against any other Mutual Party with respect to the agreements* listed in paragraph 2.3. Escrow is hereby instructed to deliver all such deposits, if any, to the respective Sellers under each of the agreements listed in paragraph 2.3. In the event of such failure to close on or before July 31, 1981, Continental shall have no further right to purchase the properties which are the subject matter of the agreements listed in paragraph 2.3 and each of Travelodge, Pang, Watanabe and Muir shall be free to deal with such properties in any manner and with any

persons as they choose. (Emphasis added).

5. Under this Agreement the Debtor has the right to purchase the property until July 31, 1981. The Debtor is not under any duty to perform and in the event the Debtor does not close, the parties would have no further rights against each other. The Plaintiff and Intervenors could not request specific performance on the part of Continental.

6. In *Suburban Improvement Co. v. Scott Lumber Co.*, 59 F.2d 711 (4th Cir. 1932), the Fourth Circuit Court stated:

The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option. "An 'option' is simply a contract, by which the owner of property agrees that another shall have a right to buy it [the property] at a fixed price within a certain time." ... Where, however, there is not merely the right but the obligation to buy, the contract is not one of option, but is a binding contract of sale. (citations omitted). *Id.* at 715.

7. The Agreement was supported by consideration for the exclusive period to purchase by the Debtor. Debtor was required to deposit with escrow the sum of $20,000 cash and a promissory note in the principal sum of $530,000 due and payable without interest on July 31, 1981.

8. The Court finds that in the instant case the Agreement did not impose a binding obligation on the Debtor. In the event that Debtor failed to close, it would merely forfeit its deposit. Therefore, the Agreement was not a binding contract of sale, but rather it was an option. The Agreement superseded the earlier agreements to the extent that the terms were not consistent.

9. Debtor cites the cases of *Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337 (1978) and *State Savings v. Kauaian Development Co., Inc.*, 50 Haw. 540, 445 P.2d 109 (1968), to establish that equity abhors a forfeiture and that Debtor has an equitable interest in the land rather than an option.

10. Both the *Jenkins* and *State Savings* cases can be distinguished on their facts. In *Jenkins, supra,* the Hawaii Supreme Court found that under an agreement of sale the purchaser obtained an equitable interest in the property and the forfeiture clause in the agreement was to secure performance. This instant case clearly does not involve an agreement of sale. The Agreement did not bind Debtor to purchase; it permitted Debtor to close on July 31, 1981, if it so desired.

11. In *State Savings, supra,* the parties entered into a contract for sale, not an option. The case was decided based upon the rights of the parties under the contract for sale of real property. The court found that the mortgagor executed the mortgage with knowledge of the prior condominium sales.

12. The Court finds that the Agreement conferred an option to purchase, which is an irrevocable and continuing offer to sell until July 31, 1981. It conveyed no interest in and to the Debtor, but vested Debtor only with a right to purchase. In *Richardson v. Hardwick,* 106 U.S. 252, 1 S.Ct. 213, 27 L.Ed. 145 (1882), the United States Supreme Court stated that a person having an option to purchase land, has no equitable or legal interest in and to the land. In *Hardwick,* Richardson sought to compel specific performance on a contract relating to lands owned by Hardwick. The contract was deemed to be an option to acquire a one-half interest in the land. The Court stated:

> The contract, of itself, did not vest him with any interest or estate in the lands. It merely pointed out the mode in which he might acquire an interest, namely by paying a certain sum of money within a certain time. *Id.* at 254, 1 S.Ct. at 215.

■ 13. An option is an executed contract, not an executory contract. *Yee Hop v. Nakuina,* 27 Haw. 286, 291 (1923). An option given for the sale of land is not a sale of real estate nor an agreement of sale. The optionee has no equitable interest in the land, but rather the right or privilege to buy at his election or option. The Hawaii Supreme Court has described an option as follows:

> The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or rather, from his point of view, he receives the right to elect to buy. . . . *The sale of an option is an executed contract. Id.* at 290–91.

14. The Ninth Circuit in *Fenix Cattle Co. v. Silver,* 625 F.2d 290 (9th Cir. 1980) adopted the following definition c f "executory contract":

> [Defined] executory contracts as those "under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other". (citations omitted). *Id.* at 292.

15. In the instant case, this Court finds that the Settlement and Extension Agreement is an option which is an executed contract. This decision is consistent with the Ninth Circuit definition of an executory contract since Plaintiff and the Intervenors have parted with their right to sell their properties except as to Debtor, until July 31, 1981, and the Debtor has received the sole right to elect to buy the properties until July 31, 1981.

■ As of July 31, 1981, when Debtor filed its petition in the Bankruptcy Court, there was nothing else to be performed by Plaintiff and the Intervenors. They had performed their obligations under the option, the Settlement and Extension Agreement, in that during the period of the Agreement, they had refrained from selling their properties to anyone except the Debtor. Since the Agreement is an option contract and not an executory contract, it cannot be assumed or rejected by the Debtor.

B. *What is the effect of the filing of the bankruptcy petition on the Settlement and Extension Agreement?*

■ 16. In an option, the optionee pays consideration for the exclusive privilege of purchasing a parcel of land or some other

property within a specified time. When that exclusive period expires, the optionee has received consideration for what he has paid. Thus, there is no forfeiture on the part of the optionee if the option is not extended.

17. In *Cillessen v. Kona Company*, 73 N.M. 297, 387 P.2d 867 (1964), the court stated:

> Further, it has been held that option contracts do not come within the equitable rule against forfeiture, for failure to comply strictly with the conditions deprives no party of any right and abrogates no contract. (citations omitted). *Id.* at 870.

18. The Court finds in the instant case that the Settlement and Extension Agreement is an option that terminated on July 31, 1981, by its own terms under principles of contract law. *See, e. g., In re Trigg*, 630 F.2d 1370 (10th Cir. 1980).

19. In addition, the Court concludes that there was no equitable conversion under the option. Therefore, this Court has no further jurisdiction over the property claimed by the Plaintiff and Intervenors.

Having found that the Settlement and Extension Agreement is an option and not a contract for the sale of an interest in land, this Court does not address the third issue presented at the hearing, as to whether or not there is equity in the property covered by the Agreement.

A Judgment will be signed on presentment.