**In re David STEFFEN and Barbara Steffen, Debtors.**

**Bankruptcy No. 94–33752.**

United States Bankruptcy Court,
W.D. Washington.

May 17, 1995.

---

J.D. Nellor, Morse & Bratt, Vancouver, WA, for debtors.

Russell D. Garrett, Hooper & Englund, Portland, OR, for GMAC.

**DECISION ON GMAC'S MOTIONS TO REQUIRE DEBTORS TO ASSUME OR REJECT EXECUTORY CONTRACT AND FOR RECONSIDERATION**

PHILIP H. BRANDT, Bankruptcy Judge.

■ Section 365(a) of the Bankruptcy Code[1] provides: "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The question here presented is whether the agreement to finance debtors' car, which includes a provision giving them an option to require the finance company to repurchase the vehicle, must be assumed and paid at the contract rate if debtors are to retain the vehicle. I conclude assumption is unnecessary.

## I. BACKGROUND

Debtors David and Barbara Steffen filed for relief under Chapter 13 on 27 September 1994. Among their creditors is General Motors Acceptance Corporation ("GMAC"), which had financed their acquisition of a 1993 Buick LeSabre in May of 1993. The purchase price (including sales tax of $1,664.40) was $27,238.40, and the transaction was documented with a GMAC form captioned:

SmartBuy
Retail Instalment Sale Contract
GMAC Flexible Finance Plan

After deductions for a factory rebate and their trade-in, and addition of license and title fees and (apparently) the cost of an extended warranty, the amount the Steffens financed was $24,090.00, which they agreed to pay (with interest at an annual percentage rate of 8.65%) in 47 monthly installments of $464.79, and a final payment of $7,927.94 in May of 1997. The SmartBuy contract provides:

**Buyer's Last Payment Options.** You may meet your obligation to pay the payment due at the end of the contract term by choosing one of the following options:

1. You may pay the payment due at the end of the contract term on its due date; or

2. You may, if you have met each of the conditions in the paragraph below entitled "Your Option to Sell":

a. sell the vehicle to the Creditor and have the Sale Price applied to the payment due at the end of the contract term; and,

---

1. 11 U.S.C.: Absent contrary indication, all section and chapter references are to the Bankruptcy Code. This case was filed before 22 October 1994, the effective date of the Bankruptcy Reform Act of 1994, Pub.L. 103–394, 108 Stat. 4106 (1994).

b. pay the Creditor any excess of the payment due at the end of the contract term over the Sale Price; or

3. You may enter into a new written agreement with the Creditor to refinance the payment due at the end of the contract term.

The conditions to the Buyer's exercise of the option include giving 30 days advance notice of intention to exercise, keeping all agreements under the contract, and making all payments.

Debtors scheduled the value of the car as $13,500.00 and proposed in their Plan to treat GMAC's claim as secured to the scheduled value, and to make payments of $287.00 per month for 60 months. Steffens' proposed Plan payments would not meet the option's conditions.

■ GMAC filed its proof of claim in the amount of $19,304.37, indicating the contract payments are $464.79 per month, the contract interest rate 8.65% [per annum], and the estimated value of the Buick, $15,800.00. GMAC also filed a Motion to Require Debtors to Assume or Reject Executory Contract, and an Objection to Valuation and Confirmation.[2] Debtors have filed their Objection to Claim of GMAC.

The Objections, which relate to the value of the Buick, need not be resolved to address the critical issue raised by the Motion: does the Steffens' option to require GMAC to repurchase make the SmartBuy contract executory? If so, must they assume it and make payments at the full contract rate to keep the car? In that event, the claim will in effect be treated as fully secured, although it is (by GMAC's figures) undersecured by about $3,500.00.

## II. PROCEDURE

GMAC's Motion is a core proceeding within this Court's jurisdiction. 28 U.S.C. § 157(b)(2)(B) and § 1334; GR 7, Local Rules W.D.Wash.

■ Three procedural asides: first, Metro Buick–Olds is identified on the face of the SmartBuy contract as "Creditor" as well as "Seller." Although the form contains a box in which Seller assigns its interest to GMAC "under the terms of the GMAC Retail Plan agreement," that agreement is not in evidence, and nothing within the SmartBuy contract specifies that GMAC becomes the "Creditor" upon assignment. GMAC may lack standing to bring its Motion.

Nor is anything else in evidence: while each side has submitted pleadings and copies of documents, nothing is sworn. As the issue is one of law, and there are no objections, I take the matter as submitted on the pleadings, and decide the Motion on the premises that GMAC is the "Creditor" and that the Steffens entered into the SmartBuy contract.

■ Finally, should the Chapter 13 trustee, rather than the Steffens, be defending this Motion? After all, § 365(a) gives the assume/reject determination to the trustee, not debtors, and nothing in Chapter 13 directly authorizes debtors to exercise that power. However, the outcome of that decision, at least if it is to assume, must of necessity be implemented in a plan, and only debtors may propose a plan. § 1321; 1 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 3.46 at 3–40, n. 111 (1994). Debtors are, no doubt, parties in interest and, pre-confirmation, perhaps the only parties with an interest opposed to GMAC's. The trustee has not stated her position. Since debtors' plans may provide for the assumption or rejection of executory contracts, § 1322(b)(2), the Steffens are proper parties. *See*, K. Lundin, § 3.47. I need not here resolve what happens if the trustee and the debtors have inconsistent views regarding a particular contract.

## III. DISCUSSION

■ Although GMAC asks, in its Motion, that the Steffens be required to assume or reject the entire SmartBuy contract, it nowhere asserts that the sale and security interest portions of the contract are executory. That would be a forlorn quest, for the

---

**2.** Unless the creditor's value would render the Chapter 13 plan infeasible, the Objection to Confirmation is superfluous, as the value stated by

the creditor in its claim controls unless and until an objection to the claim is sustained. § 502(a); Rule 3001(f), Fed.R.Bankr.P.

"Ownership and Risk of Loss" paragraph of the SmartBuy contract, among others, evidences the parties' intention to effect a present sale and to create a security interest. Further, the title certificate lists Steffens as "Registered Owner[s]" and GMAC as "Legal Owner," Washington terminology for owner and lienholder, respectively. Finally, even if this were an installment sale, where (as here) the goods have already been delivered and the seller's only remaining obligation is delivery of title on receipt of full payment, there is no executory contract. *In re Pacific Express, Inc.*, 780 F.2d 1482, 1487–88 (9th Cir. 1986).

■ A single agreement may have both executory and non-executory aspects. In *Pacific Express*, the Ninth Circuit stated:

The parties agree, and we concur, that the "Lease Agreement," the Maintenance Agreement, and the software license were all parts of a single transaction. See, e.g., *In re Steen*, 509 F.2d 1398, 1403 (9th Cir. 1975). However, that does not mean that they constituted a single contract for purposes of section 365. If the agreement for the secured sale of the Original Equipment can be disaggregated from the agreement to maintain and license software for that equipment, then there are two contracts here, and each must qualify as an "executory contract" or "unexpired lease" in order for it to require assumption or rejection. Cf. *Jenson v. Continental Financial Corp.*, 591 F.2d 477, 482 (8th Cir.1979) (security agreement considered separately from underlying secured obligation for section 365 purposes); *In re Smith Jones, Inc.*, 26 B.R. 289, 291 (Bankr.D.Minn.1982) (agreement to repair and replace goods isolated from the sale of the goods as a separate executory contract for purposes of § 365). For a number of reasons, the "Lease Agreement" viewed apart from the maintenance/software contract does not come within the reach of section 365. [footnote omitted]

780 F.2d at 1486–87.

The *Pacific Express* court did not advert to state contract law in "disaggregating" the

agreement. In a later case, although the Ninth Circuit noted that "[w]hether a contract is executory for a party in bankruptcy is a question of federal law[,]" the court referred to the pertinent state law in declining to treat separately the various contractual provisions in that case. *In re Qintex Entertainment, Inc.*, 950 F.2d 1492, 1495–96 (9th Cir.1991).

■ If the SmartBuy contract must be severable as a matter of state law to analyze the "executoriness" of its components separately, a Washington court would likely so find. The performances of GMAC and the Steffens are readily divisible into equivalent and corresponding parts: respecting the loan, payment, and respecting the option, performance of the conditions precedent to exercise. *Mutual of Enumclaw Insurance Co., v. Cox*, 110 Wash.2d 643, 649, 757 P.2d 499 (1988); *Baffin Land Corp. v. Monticello Motor Inn*, 70 Wash.2d 893, 903, 425 P.2d 623 (1967).

Ninth Circuit courts generally view executory contracts through the prism of the Countryman definition: contracts are executory when material obligations remain to be performed by each party.[3] *Pacific Express*, at 1487; *In re Qintex Entertainment*, at 1495, and cases cited. The Supreme Court, in a footnote, has also described an executory contract as one in which "performance remains due to some extent on both sides." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984).

■ Notwithstanding Professor Countryman and *Bildisco*, and although optionees have no duty to exercise their options (thus their performances are discretionary, not due to their optionors), the Ninth Circuit has explicitly held options are executory contracts. *In re Easebe Enterprises, Inc.*, 900 F.2d 1417, 1419 (9th Cir.1990), citing *In re Rehbein*, 60 B.R. 436, 441 n. 6 (9th Cir. BAP 1986) and *In re Coordinated Financial Plan-*

---

**3.** Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973).

*ning Corp.,* 65 B.R. 711, 713 (9th Cir. BAP 1986) in support. The Circuit Court did not identify in *Easebe* any duty on the optionee/debtor's part, or articulate why § 365(a) applied, nor did the Appellate Panel in *Rehbein* or *Coordinated Financial Planning.* The court in *Easebe* went on to hold that the option there at issue, which required the optionor to finance the purchase, was a "financial accommodation," precluded from assumption by § 365(c)(2).

Had the Steffens wanted to assume, treating the option as an executory contract would create a conundrum: what, beyond their saying so, would be required of them to do so? Nothing in the SmartBuy contract requires payments or other performance for debtors to retain their option, although their right to exercise the option depends on their satisfying the conditions, which include payment.

▆ Parenthetically, if a strict application of the Countryman definition were mandated, and the option held non-executory and nonassumable, as in *In re Continental Properties, Inc.,* 15 B.R. 732, 736 (Bankr.D.Haw.1981), the practical result would be unchanged: there would be no contract which could be assumed, and (provided their plan is confirmed) Steffens could keep the Buick by making payments calculated from GMAC's secured claim. *See also, In re Columbia Gas System, Inc.,* 50 F.3d 233 (3rd Cir.1995), holding that, where the non-performance of the non-debtor parties to a settlement agreement would constitute the failure of a condition precedent to their right to payment, but not a breach, there is no executory contract assumable under § 365.

▆ Similarly, reaching a contrary result on the disaggregation question which began this Discussion would not yield a changed outcome. While the debtors' failure to make the full contract payments would no doubt be a material breach, still the SmartBuy contract documents a financed sale, and not a lease. So long as their plan provides for GMAC to retain its lien and pays GMAC the value of its secured claim, the Steffens' plan could be confirmed, and they would be able to keep the car. § 1325(a)(5)(B).

The option context demonstrates the validity of the insights of Judge Kressel in *In re G–N Partners,* 48 B.R. 462, 465–66 (Bankr. D.Minn.1985), and of Professors Andrew and Westbrook in their articles,[4] that reliance on the Countryman definition masks the fundamental question: do the benefits the estate obtains by assuming and performing the contract exceed the administrative costs of doing so?

▆ Finally, if rejection means anything more than non-assumption, *see* M. Andrew, *Executory Contracts* ... at 931–932, I take Steffens' resistance to the Motion as rejection, and approve.

## IV. RECONSIDERATION

As neither party had briefed the "disaggregation" issue, I granted GMAC's request for argument of its Motion for Reconsideration of the original version of this Decision, and allowed submission of additional evidence.

GMAC contends the SmartBuy contract is integrated and must stand or fall as a unit. Its uncontroverted affidavits indicate that GMAC sets the SmartBuy payments as if they were lease payments, to cover only the car's depreciation, resulting in lower payments for customers, calculating that any of the end-of-term options will compensate it for the difference. GMAC avers:

> [W]here a typical 48 month financing transaction on a vehicle costing approximately $15,000 would result in monthly payments of $356 to GMAC, a comparable SmartBuy covering a vehicle of $15,000 would cost the customer only $283 per month.

Although GMAC makes no attempt to establish that the Steffens knew what a break they

---

4. Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection",* 59 U.Colo.L.Rev. 845, 881–882 (1988); Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts,* 74 Minn.L.Rev. 227, 231, 330 (1989); and Michael T. Andrew, *Executory Con-* *tracts Revisited: A Reply to Professor Westbrook,* 62 U.Colo.L.Rev. 1 (1991). *See also,* Judge Conrad's concise recapitulation in *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 700–09 (Bankr.S.D.N.Y.1992).

were getting, or what significance that would have, its papers include a copy of a brochure making the comparison and outlining the benefits to purchasers.

Whether or not the claim that the payments only cover depreciation, and no recovery of capital costs, would survive cross examination, the Steffens do not dispute that they paid less under the SmartBuy contract than the would have in a "typical" financed purchase. GMAC does not articulate why legal consequences should follow from its marketing decisions.

■ From its unilateral economic determination that it could offer lower payments because of the end-of-term options, GMAC argues (citing no authority) that the Smart-Buy contract is integrated and not severable. The argument is unpersuasive: the contract has no integration clause, and explicitly provides, in the column adjacent to the "Buyer's Last Payment Options" and "Your Option to Sell" paragraphs, and immediately above the warranty disclaimer:

> If any part of this contract is not valid, all other parts remain enforceable.

GMAC attempts to distinguish *Pacific Express* by noting that the Ninth Circuit there "placed substantial reliance" on the fact that "no future failure to perform by [the non-debtor party] would have excused Pacific from its obligation to pay for the delivered equipment." 780 F.2d at 1487–88. But that is also true here: GMAC has no further contractual duty until the end of the term, and it has a duty then to repurchase the Buick *only if* the Steffens have made all their payments *at the contract rate,* and met the other conditions.

■ GMAC next misreads the preceding Discussion (substantively unchanged from the original) as holding the SmartBuy contract nonexecutory because it is secured. On the contrary, and although the Ninth Circuit did not elaborate in *Pacific Express,* 780 F.2d at 1487, it is the completed sale which is nonexecutory, rather than the security interest which makes it so. *But see, In re Cox,*

179 B.R. 495 (Bankr.N.D.Tex.1995) and *In re Keblish,* 180 B.R. 176 (Bankr.E.D.Tex.1995), both holding GMAC SmartBuy contracts not executory contracts, in part because they create security interests.

■ Finally, GMAC asserts that rejection of the SmartBuy contract requires surrender of the vehicle. Even granting its premises, that the contract cannot be disaggregated and that it is executory, rejection merely

> [C]onstitutes a breach ...
>
> (1) ... immediately before the filing of the petition[.] § 365(g).

No authority is cited for the necessary proposition that GMAC is entitled to relief beyond having its claim, partially secured, properly treated under the Steffens plan, nor is any rationale beyond GMAC's unilateral economic concerns given.

## V. CONCLUSION

In essence the SmartBuy contract is a secured installment sale with a low monthly payment and a balloon payment at the end. The purchaser's only option is how to pay. GMAC need not repurchase (effectively, accept the vehicle as payment in full) unless it has gotten exactly what it bargained for. The creditor's proclaimed fear of being crammed down while still exposed to the obligation to repurchase is illusory.

■ Categories have consequences in commercial law, and GMAC's choice to market a secured sale with lease-like economic provisions does not put the transaction into the Bankruptcy Code's lease category. Whether the policy of treating secured sales differently from leases is wise, logical, or philosophically elegant,[5] that is the policy Congress enacted.

■ I find that the debtors are proper parties and that only the option to require GMAC to repurchase is executory, and conclude that Steffens need not assume the entire SmartBuy contract to keep the car. In the unlikely event (considering their pro-

---

5. *See,* John D. Ayer, *An Unrepentant View of the Sale–Lease Distinction,* 4 J.Bankr.L. & Pol. 291 (1995).

posed Plan) Steffens want to retain the option, they must assume it, and perform its conditions to exercise it. I will deny GMAC's Motion and its Motion for Reconsideration.