WARDLAW, District Judge.
The question presented by these consolidated appeals from a decision of the Bankruptcy Appellate Panel of the Ninth Circuit (“B.A.P.”) is whether an option contract is an executory contract which, under Section 365 of the Bankruptcy Code, may be assumed or rejected by the trustee. In Gill v. Easebe Enters. (In re Easebe Enters.), 900 F.2d 1417 (9th Cir.1990), we held that an option contract is an executory contract governed by Section 365. Id. at 1419.
The Bankruptcy Court below found the option contract at issue to be an executory contract as a matter of federal law, relying on Easebe as clear Ninth Circuit authority, as well as complementary Fifth Circuit precedent. The B.A.P. reversed, holding that the option contract in this proceeding is not *1472 executory as a matter of law, and remanded the action for determination of an appropriate remedy. We reluctantly reverse the B.A.P. decision, because it is contrary to controlling Ninth Circuit authority as set forth in Easebe.[1]
The B.A.P. Decision
The sole issue the B.A.P. addressed was whether an option contract to purchase real estate was executory in nature and thereby deemed rejected by a confirmed plan in a prior bankruptcy.
In its decision, the B.A.P. aptly described the federal law governing the determination of executory contracts under the “Countryman” definition[2] adopted by the Ninth Circuit. It then criticized the Ninth Circuit case on point, Easebe, in which we applied the Countryman definition to find that “[a]n option contract is an executory contract,” by first explaining:
The Easebe court made no attempt to analyze why the characteristics of an option contract were seen as executory in nature, instead citing for ’authority the cases of [Horton v. Rehbein (In re Rehbein), 60 B.R. 436, 441 n. 6 (Bankr.9th Cir.1986) ] and Steffan v. McMillan (In re Coordinated Fin. Planning Corp.), 65 B.R. 711, 713 [ (Bankr.9th Cir.1986) ].
B.A.P. Memorandum at 6.
The B.A.P. next demonstrated why Ea-sebe ’s reliance on Rehbein. and Coordinated Financial Planning was misplaced:
Rehbein, too, fails to discuss why an option contract is considered executory. The proposition is briefly stated in a footnote that option contracts are “generally executory contracts until the option is exercised.” Rehbein, 60 B.R. at 441 n. 6. Rehbein involved a pre-petition installment land contract that the court held to be non-executory because the debtor had already placed the deed in escrow and had no other material obligations to perform. Rehbein, 60 B.R. at 441. The reference in the footnote to option contracts arose only because the court noted that the underlying contract contained an option to purchase additional property but that the appellants had not provided any evidence that, the property covered by the option was still in the estate. Rehbein, 60 B.R. at 441. Thus, the issue of option contracts was not even before the court.
The Coordinated Financial Planning case involved a right of first refusal (option to purchase) that the panel held to be an executory contract. 65 B.R. at 713. In doing so, the panel referred to In re Waldron, a case holding that an option contract to purchase real property was execu-tory. 36 B.R. 633 (Bankr.S.D.Fla.1984), aff'd, unpublished opinion by district court, rev’d, 785 F.2d 936 (11th Cir.1986) (on grounds that using Chapter 13 for the purpose of rejecting an executory contract was bad faith) [, cert. dismissed sub nom. Waldron v. Shell Oil Co., 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986)]. Although the panel agreed with Waldron’s holding, we cannot determine whether it also adopted that case’s method of analysis. Coordinated Financial Planning, 65 B.R. at 713. Waldron’s approach called upon a court to look, in the final analysis, not at the mutuality of obligations, but at the nature of the parties and the goals of reorganization. Waldron, 36 B.R. at 637. The problem with that approach, which the Waldron court itself recognized, is that it can be criticized for being “result oriented.” Waldron, 36 B.R. at 639.
B.A.P. Memorandum at 6-8.
Nevertheless, the B.A.P. attempted to distinguish Easebe, finding the agreement there “materially different” from the contract here. The B.A.P. reasoned “that Easebe involved an accommodation agreement while South-mark’s option, if exercised, does not require the optionor to finance the purchase.” Id. at 8.
Finally, having determined that Easebe was superficial, unsupported, and distin *1473 guishable, the B.A.P. set forth what it considered to be a better approach to the issue:
We do not consider it a wise approach to assert a blanket rule that all option contracts are executory in nature. Instead, we believe it is appropriate to consider the mutuality of obligations present in order to determine if the option in question falls within the applicable definition. The key consideration is whether performance remains due on both sides.
Here, Southmark gave $10 and other valuable consideration in exchange for the landowner giving the right to exercise the option. With respect to the party against whom the option is held (the optionor) it seems clear that no performance remains due. In fact, there is nothing that party can do. They cannot act to withdraw the option. They cannot force the optionee to exercise the option.
Similarly, no performance remains due with respect to the optionee. Southmark has no obligation to exercise the option. It cannot be forced to exercise it and may instead choose to let it lapse. Any performance due under the option agreement was completed when Southmark transferred the $10 and the optionor gave up the right of option. Seen in this light, there is no outstanding performance due on either side and the agreement fails to be an executory contract. In fact, it is a fully performed contract.
It might be argued that the ability to take further action could be seen as performance remaining due with respect to a party. If so, then Southmark could be viewed as having outstanding performance due on its part. However, the agreement still fails to meet the Alexander [Countryman] definition of an executory contract because the optionor does not have the ability to take further action. There is nothing the optionor can do to make the option come into existence or, in the alternative, cause its failure. Thus, there is not outstanding performance due on both sides.
This analysis is supported by the fact that a contract’s executory nature is determined at the time a petition for relief is filed. Collingwood Grain, Inc. v. Coast Trading Company (In re Coast Trading Company), 744 F.2d 686, 692 (9th Cir.1984). In fact, a very different outcome can be imagined where an optionee serves notice of its intent to exercise the option and thereafter debtor files bankruptcy before optionee pays the purchase price and before title is conveyed. Having served notice of its intent, the parties are now bound to perform under a new bilateral contract. Viewed at the time of filing, the optionee is obligated to pay the purchase price and optionor is obligated to convey title. In that situation, the contract is executory in nature. Either party’s failure to perform would constitute a material breach such that the other party would be excused from performing. Alexander, 670 F.2d at 887; Rehbein, 60 B.R. at 440.
Another important way of analyzing the option in this proceeding is to consider the issue of material breach---- Viewed at the time of bankruptcy, Southmark is incapable of breaking the option agreement since failure to exercise the option would not be a breach. Similarly, because the optionor has no outstanding obligations and no ability to take action they too are unable to breach.
B.A.P. Memorandum at 8-10.
Discussion
We agree with the B.A.P. The Ea-sebe decision lacked any analysis of the characteristics of option contracts which should determine whether all such contracts are ex-ecutory in nature. Further, its reliance on Rehbein and Coordinated Financial Planning was misplaced for the reasons stated by the B.A.P., and for other reasons as well. In particular, it is plain that Coordinated Financial Planning did not address option contracts, but rather rights of first refusal, which are quite distinct.[3] In addition, Wal- *1474 Aron, the case on which Coordinated Financial Planning relies, is factually inapposite in that there, the debtors were the givers of the option — not the holders. Accordingly, they had the obligation to sell the property upon a proper demand from the holder. The terms of the option were so favorable that it was “completely foreseeable that [the option holder would] exercise the option, as no reason-, able and prudent person would abandon such a valuable asset.” In re Waldron, 36 B.R. at 637. Therefore, the Waldron court “presumed that exercise of the option will occur,” and thus the debtor’s obligation to perform remained due, potentially burdening the estate, and rendering rejection of the contract consistent with the policies of Section 365. Id.
Therefore, we are in accord with the B.A.P. that the better view of the law is that each option contract must be analyzed when the bankruptcy petition is filed, according to its individual characteristics. The statement in Easebe is simply overbroad. Upon thorough analysis it will be found that some option contracts are executory contracts and some are not.
Moreover, the policies of the bankruptcy laws are best served by the B.A.P.’s approach. Bankruptcy law should operate to preserve and maximize the value of the estate. When a contract is truly executory, in the sense that obligations remain unperformed on each side, the trustee may elect whether or not to perform, choosing the course of action that would best serve those goals.[4] Yet the rote executory classification of the option here leads us to the absurdity of treating what in reality is an asset of the estate, having value in the market, as something wholly without value, deemed rejected by the estate. To treat all option contracts, regardless of their unique characteristics, as executory in nature thus in many eases will either result in an illogical contravention of bankruptcy policies, or force courts to create legal fictions and meaningless factual distinctions harmful to the development of the bankruptcy law, as they work to further its very purposes.[5]
However, we cannot agree that any meaningful factual distinction removes this case from the control of Easebe. The option in Easebe was a financial accommodation contract, a type of option specifically singled out in the statute for special treatment: Section 365(c)(2) prohibits a trustee from assuming an executory contract that is a contract “to make a loan, or extend other debt financing or financial accommodations to or for the benefit of the debtor.” Easebe, 900 F.2d at 1419 (quoting 11 U.S.C. § 365(c)(2)). The Easebe Court was first required to determine whether the option contract was an executo-ry contract and, only then, to determine the assumability of the particular type of execu-tory contract in that case. In the first stage of its analysis, the Court ruled that all op *1475 tions are executory, a ruling which applies equally to the option here. That the option in Easebe was an executory contract for a financial accommodation is beside the point. Easebe must be followed.
Conclusion
Despite the clear logic and persuasive reasoning of the B.A.P. decision, the B.A.P. erred in straying from binding Ninth Circuit authority. Given the plain language of Ea-sebe, the B.A.P. was not free to take a contrary position in accordance with its own, albeit better reasoned, analysis.
The decision of the B.A.P. is therefore reversed. The validity of appellant South Meadows’ free and clear title on the property, pursuant to 11 U.S.C. § 363(f)(4), was not affected by these proceedings, and therefore its appeal is moot. 11 U.S.C. § 363(m); Ewell v. Diebert (In re Ewell), 958 F.2d 276, 280 (9th Cir.1992).
REVERSED.

. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(d), and reviews the legal conclusions of the B.A.P. de novo. California State Univ. v. Gustafson (In re Gustafson), 934 F.2d 216, 218 (9th Cir.1991).

. Professor Countryman defines executory contracts as those where the obligations of both parties "are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.” Benevides v. Alexander (In re Alexander), 670 F.2d 885, 887 (9th Cir.1982).

. Rights of first refusal "are closely related to the purposes of option contracts and yet are very dissimilar in the legal relations of the parties who make them.” 3 Corbin on Contracts § 11.3 at 468 (rev. ed. 1996). Unlike an option, which constitutes an irrevocable offer and allows the holder to essentially force the giver to sell under its terms, rights of first refusal create a right of preemption, and the right to receive an offer before others do. Id. at 470.

. A contract with obligations due on only one side is an asset or liability of the estate. If performance is due to the debtor, the contract is an asset, which becomes estate property, and which the trustee may reject if burdensome. T.G. Motors, Inc. v. C.M. Turtur Investments, Inc. (In re C.M. Turtur Investments, Inc.), 93 B.R. 526, 532-33 (Bankr.S.D.Tex. 1988); see 11 U.S.C. §§ 542, 554. If performance is due by the debt- or, it is a liability of the estate and the nondebtor is an unsecured creditor. This liability-type of option is more likely to burden the estate and thus more likely to be rejected if considered to be an executory contract. When a contract is rejected under Section 365(a), the nondebtor has a claim for damages prioritized above unsecured creditors. C.M. Turtur, 93 B.R. at 532-33; see 11 U.S.C. § 503(b)(1)(A) (costs of preserving estate are administrative expenses); § 507(a)(1) (administrative expenses are first priority claims). To classify an option as an executory contract, then, elevates the nondebtor’s claim.

. It appears from post-Easebe decisions that the blanket classification forces courts attempting to apply the Countryman definition to stretch for creative distinctions of Easebe. Compare In re Crummie, 194 B.R. 230, 233 n. 5 (Bankr. N.D.Cal.1996) ("option” in the agreement used in the sense of "choice”); In re America West Airlines, Inc., 179 B.R. 893, 896 (Bankr.D.Ariz.1995) (stock options are different from real estate purchase options and are not executory); In re Steffen, 181 B.R. 981 (Bankr.W.D.Wash.1995) ("Notwithstanding Professor Countryman and Bildisco, and although optionees have no duty to exercise their options (thus their performances are discretionary, not due to their optionors), the Ninth Circuit has explicitly held options are ex-ecutory contracts.”) with Travelodge Int'l, Inc. v. Continental Properties, Inc., 15 B.R. 732, 736 (Bankr.D.Haw.1981) (expressly holding that an option contract is not an executory contract). The inevitable result of these machinations is to undermine any certainty or clarity in the application of the bankruptcy law.