Opinion by Judge KOZINSKI; Partial Concurrence and Partial Dissent by Judge THOMAS; Concurrence by Judge RYMER; Partial Concurrence and Partial Dissent by Judge FERNANDEZ.
KOZINSKI, Circuit Judge.
Guided, or misguided, by Gill v. Easebe Enters. (In re Easebe Enters.), 900 F.2d 1417, 1419 (9th Cir.1990), the bankruptcy court below held that an option is an executo-ry contract. We took the case en bane to consider whether Easebe was correctly decided.
I
Southmark, a Texas corporation, sold the Double Diamond Ranch in Nevada to the Double Diamond Ranch Limited Partnership, retaining an option to buy back part of the ranch. Southmark later filed for bankruptcy in the Northern District of Texas. As part of its chapter 11 reorganization plan it assumed various executory contracts by filing a Notice of Assumption; the plan provided that all executory contracts not listed were deemed rejected. See 11 U.S.C. § 1123(b)(2). The Notice didn’t list the option to buy back the ranch, so it would have been deemed rejected if it was an executory contract. No one, however, raised the question in the Texas bankruptcy proceeding and the bankruptcy court there apparently did not have occasion to rule on the matter.
Double Diamond then itself filed for bankruptcy in the District of Nevada. The Committee administering the Double Diamond bankruptcy decided to sell the ranch to South Meadows Properties Limited Partnership, a buyer apparently chosen because its name maximizes confusion with Southmark.[1] The Committee asked the Nevada bankruptcy court to allow sale of the ranch free and clear of Southmark’s option. A free and clear sale was appropriate only if the option was no longer valid because it had been stripped away in the Texas bankruptcy proceeding. The Nevada court thus had to determine the effect of that earlier Texas proceeding on the title to the ranch. Relying on Easebe, the Nevada bankruptcy court held that the option was an executory contract which had been rejected in Southmark’s bankruptcy. It therefore allowed Double Diamond to sell the ranch to South Meadows free and clear of Southmark’s option.
Southmark appealed to the Bankruptcy Appellate Panel, which reversed, holding that the option was not executory. The Committee appealed for Double Diamond. Our three-judge panel reversed the B.A.P.[2] The *704 panel approved most of the B.A.P.’s reasoning, but held that the bankruptcy court had been right to follow Easebe as the law of the circuit. At the same time, the panel expressed doubt whether Easebe was right. See In re Helms, 110 F.3d at 1473-74. We now vacate the panel opinion and overrule Easebe.
II
First, however, we must dispose of several preliminary matters. South Meadows’ victory, now final, see n.2 supra, raises a mootness question. South Meadows owns the Double Diamond Ranch free and clear of the option. Should Southmark win here, what good would that do it? Although Southmark can no longer exercise the option, it can still seek damages from the Double Diamond estate. The bankruptcy court set aside $30,000 for adequate protection of Southmark’s interest in the ranch, see 11 U.S.C. § 363(e), and noted that Southmark could pursue a claim for damages against the sale proceeds as well. If the bankruptcy court on remand decides that the option was not executory, there are appropriate remedies it can impose to make Southmark whole.
Next, we must determine the effect of the confirmed Southmark plan of reorganization. A confirmed reorganization plan operates as a final judgment with res judicata effect. 8 Collier on Bankruptcy ¶ 1141.02[4] (15th ed.1997). If the plan treats the option as an unassumed executory contract, we must then deem it rejected. If the option is treated as an asset instead, then the reversion of property from the estate to the debt- or upon confirmation is subject to the provisions of the plan. Hillis Motors, Inc. v. Hawaii Auto. Dealers’ Ass’n, 997 F.2d 581, 587 (9th Cir.1993).
We do not have the entire record of the Southmark bankruptcy before us. Although it appears that the reorganization plan says nothing about the option, we can’t determine with full confidence whether the plan explicitly [3] resolved the question whether the option was an executory contract. Nor can we determine how it disposes of undisclosed assets. See Hillis Motors, 997 F.2d at 587. It is also unclear whether the Nevada bankruptcy court has already addressed these questions.[4] On remand the bankruptcy court shall consider these questions to the extent that it has not already done so.
Finally, the option provides that it would terminate if Southmark files for bankruptcy.[5] However, 11 U.S.C. § 541(c)(1) *705 makes this unenforceable.[6] The Committee argues that section 541(c)(1) does not apply if the option is no longer property of the estate. But that is precisely the question at issue-the option ceased to be property of the estate only if it was rejected, and that in turn depends on whether or not the option was an executory contract. We now turn to that question.
Ill
An executory contract is one “on which performance remains due to some extent on both sides.” National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 522-23 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (quotation marks and citation omitted). More precisely, a contract is executory if “the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.” Griffel v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir.1988).[7]
A paid-for but unexercised option presents a puzzle. Is it executory or isn’t it? Each side may have unperformed obligations, but they are contingent on the optionee’s[8] decision to exercise the option. If it does, the optionor has a duty to deliver the property, and the optionee may have a duty to tender payment, depending on the mechanics of the option. But if the option is not exercised, nothing happens and neither party commits a breach. The contingent nature of the obligations has troubled courts. Some have said that these are contingent obligations, but obligations nonetheless, hence options are ex-ecutory. See, e.g., In re A.J. Lane & Co., 107 B.R. 435, 437 (Bankr.D.Mass.1989); Horton v. Rehbein (In re Rehbein), 60 B.R. 436, 441 n. 6 (9th Cir. BAP 1986). Other courts have held that the optionee has fulfilled its only true obligation under the option by paying for it; the creation of further obligations lies within the optionee’s sole discretion, so the contract isn’t executory. See, e.g, Brown, v. Snellen (In re Giesing), 96 B.R. 229, 232 (Bankr.W.D.Mo.1989); Travelodge Int’l, Inc. v. Continental Properties, Inc. (In re Continental Properties, Inc.), 15 B.R. 732, 736 (Bankr.D.Haw.1981).[9]
We joined the former camp in Easebe, 900 F.2d at 1419. We held “[a]n option contract is an executory contract....” Id. at 1419. The one-sentence holding rested on citation of two eases. Of these, one merely asserted without argument, in dictum, that options are generally executory. See Rehbein, 60 B.R. at 441 n. 6. The other also gave no analysis, instead citing to an earlier case from Florida. See Steffan v. McMillan (In re Coordinated Fin. Planning Corp.), 65 B.R. 711, 713 (9th Cir. BAP 1986). That Florida case relied mainly on a policy analysis, questioning the Countryman approach, so it is of marginal value to us. See In re Waldron, 36 B.R. 633, 636-40 (Bankr.S.D.Fla.1984), rev’d on other grounds, 785 F.2d 936 (11th Cir.1986). The bankruptcy court and three-judge panel in our case correctly considered themselves bound by Easebe, but- the B.A.P. correctly noted that Easebe contained a broad holding backed by little argument.
A better approach, suggested by the B.A.P. below, is to ask whether the option requires further performance from each party at the time the petition is filed. Typically the answer is no, and the option -is therefore not executory. The optionee need not exercise the option-if he does nothing, the option lapses without breach. The contingency which triggers potential obligations-exercis *706 ing the option-is completely within the op-tionee’s control. While some options may be executory, Easebe is overbroad in holding that they all are.
Nor does Easebe serve the goals of bankruptcy law, particularly that of maximizing the estate’s value. Easebe forced the bankruptcy court here to treat Southmark’s option-a valuable asset-as rejected by the estate, giving the optionor an undeserved windfall. Debtors frequently fail to recognize that some assets, such as options, are executory contracts, and so fail to expressly assume them. This leads to a trap, as unas-sumed executory contracts may be deemed rejected, either under section 365(d)(1) in chapter 7,[10] or as here, under a reorganization plan in chapter 11,[11] when the trustee has no intention of abandoning the asset.
Easebe’s troublesome policy implications have forced courts to fabricate some dubious distinctions. In our case, the B.A.P. limited Easebe to its facts, an option which was a financial accommodation. Other cases which stretched to sidestep Easebe include In re Crummie, 194 B.R. 230, 233 (Bankr.N.D.Cal.1996) (the term option not used in legal sense but in commonly understood sense of choice), and In re America West Airlines, Inc., 179 B.R. 893, 896 (Bankr.D.Ariz.1995) (holding options to purchase real property to be different from stock options, but giving no reason for the distinction). The Bankruptcy Court in In re Steffen, 181 B.R. 981, 985 (Bankr.W.D.Wash.1995), was skeptical of Ea-sebe, saying “Notwithstanding Professor Countryman and Bildisco, and although op-tionees have no duty to exercise their options (thus their performances are discretionary, not due to their optionors), the Ninth Circuit has explicitly held options are executory contracts.”
We therefore reject Easebe’s broad rule that all options are executory contracts. Instead, we look to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform. Performance due only if the optionee chooses at his discretion to exercise the option doesn’t count unless he has chosen to exercise it. An option may on occasion be an executory contract, for instance, where the optionee has announced that he is exercising the option, but not yet followed through with the purchase at the option price.
The question thus becomes: At the time of filing, does each party have something it must do to avoid materially breaching the contract? Typically, the answer is no; the optionee commits no breach by doing nothing.
It appears likely that the option here wasn’t executory when Southmark filed its petition, but the record is not entirely clear. We therefore remand to the bankruptcy court with instructions to determine the effect of the confirmed Southmark reorganization plan. If the plan does not resolve the question, we instruct the bankruptcy court to apply the appropriate legal test (as described above)[12] to determine whether this contract was executory at the time of filing, and to fashion a remedy if it finds that the option was not an executory contract and remained an asset of the Southmark estate.
REVERSED and REMANDED.[13]

. At this point, the perceptive reader may well wonder why Double Diamond does not appear in the caption to this case. The Double Diamond partnership’s bankruptcy is being jointly administered with that of the Robert L. Helms Construction & Development Company, and the Unsecured Creditors' Committee of the Helms estate is making the decisions for the Double Diamond estate.

. The three-judge panel actually had two related cases before it. One, between the Committee and Southmark, addressed whether the option *704 was valid at the time of the sale to South Meadows. This is the case we took en banc. See Unsecured Creditors' Comm. v. Southmark (In re Helms Constr. & Dev. Co.), 122 F.3d 1250 (9th Cir.1997). The second, between South Meadows and Southmark, addressed whether, regardless of the ultimate validity of the option, the sale was free and clear under 11 U.S.C. § 363(f) and could not now be modified due to 11 U.S.C. § 363(m). The panel held the sale was free and clear of the option, and that case is now final. See Unsecured Creditors' Comm. v. Southmark (In re Helms Constr. & Dev. Co.), 110 F.3d 1470, 1475 (9th Cir.1997).

. By "explicitly" we mean the bankruptcy court shall look to the terms of the court-approved reorganization plan. The plan needn’t mention this particular option; it could describe options in general, or option-like instruments, or give a definition of executory contracts that encompasses options. But the court may not look to extrinsic evidence of party intent in interpreting the res judicata effect of a court order.

. The bankruptcy court apparently proceeded on the understanding that the plan does not answer whether or not the option is an executory contract. It then turned to caselaw to determine that term’s definition. It found that Easebe answered that question, and we turn to that case in the next section.

.The relevant provisions are as follows:
2. Term of Option.
The option granted herein shall exist for a period of fifteen (15) years from the date of this Agreement, provided, however, that the option granted herein shall terminate in the event SOUTHMARK files for protection under Chapter 11 of the Bankruptcy Code....
3. Exercise of Option.
SOUTHMARK may exercise the option granted herein at any time during the term of this option by giving written notice of exercise to DDR at the address for notices provided in this Agreement, unless the option has been terminated as provided in paragraph 2. In the event SOUTHMARK exercises its option and files for bankruptcy protection as described in paragraph 2. prior to close of escrow, the option exercise shall be void and of no effect.

. Section 541(c)(1) provides that, with certain exceptions, "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law ... that is conditioned on ... the commencement of a case under this title....”

. This is often referred to as the "Countryman" definition. See Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973).

. The optionee is the person with the right to exercise the option, here Southmark. The op-tionor is the person against whom the option may be exercised, here Double Diamond.

. The question also arises in contract cases outside the bankruptcy context. "The traditional view regards an option as a unilateral contract which binds the optionee to do nothing, but grants him the right to accept or reject the offer in accordance with its terms within the time and in the manner specified in the option.” 1 Williston on Contracts § 5:16 (4th ed.1990).

. If the trustee under chapter 7 does not assume or reject an executory contract within 60 days after the order for relief, the contract is deemed rejected. 11 U.S.C. § 365(d)(1).

. A plan may provide for the assumption, rejection or assignment of an executory contract not previously rejected. 11 U.S.C. § 1123(b)(2).

. By "as described above” we mean as described above. If the court-approved reorganization plan does not address whether the option was an executory contract or an asset of the estate, then the Code governs how a plan may treat executory contracts and estate assets and how those terms are defined. This opinion prescribes the Code’s application to this case, in particular whether an option is an executory contract.

.We must reverse the B.A.P., even though it was generally correct in its analysis, because it held that the option here was not executory as a matter of law. We hold that it is a factual question to be determined by the bankruptcy court.