FILED

DEC 27 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:                              )    BAP No.   EW-17-1131-FSTa
                                    )
TERELL W. EUTSLER,                  )    Bk. No.   2:15-bk-00870-FPC
                                    )
                Debtor.             )
_____)
                                    )
BRADY F. CARRUTH; WILLIAM           )
LESLIE DOGGETT,                     )
                                    )
                Appellants,         )
                                    )
v.                                  )    **OPINION**
                                    )
TERELL W. EUTSLER,                  )
                                    )
                Appellee.           )
_____)

Argued and submitted on September 27, 2017
at Spokane, Washington

Filed – December 27, 2017

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Frederick P. Corbit, Bankruptcy Judge, Presiding

_____

Appearances:     Christopher L. Dodson of Bracewell LLP argued for
                 appellants Brady F. Carruth and William Leslie
                 Doggett; Eowen S. Rosentrater argued for appellee
                 Terell W. Eutsler.

_____

Before:  FARIS, SPRAKER, and TAYLOR, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Appellants Brady F. Carruth and William Leslie Doggett (the "Minority Shareholders") appeal from the bankruptcy court's denial of their motion for relief from the automatic stay and motion for reconsideration in debtor Terell W. Eutsler's ("Debtor") chapter 13[1] bankruptcy case. They seek to enforce an option agreement to purchase certain stock from the Debtor. We AFFIRM.

## FACTUAL BACKGROUND

The facts are undisputed. In 1995, the Debtor and Stephen Dorr incorporated Softbase Development, Inc., a closely-held Texas corporation. The Debtor is the president of Softbase and a member of its board of directors.

Initially, the Debtor and Mr. Dorr each owned half of the stock. In 1998, the Minority Shareholders purchased 49 percent of the stock for $155,000. Thus, the Debtor and Mr. Dorr each owned 25.5 percent, and the Minority Shareholders each owned 24.5 percent.

When the Minority Shareholders bought their stock, the parties entered into a Stock Restriction/Buy-Sell Agreement (the "Buy-Sell Agreement"). Among other things, the Buy-Sell Agreement provided that, upon the occurrence of certain

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

"terminating events," one of which was "the filing of any proceedings for bankruptcy . . . by a Shareholder," that shareholder was required to give written notice to the corporation and the other shareholders. The corporation then had the option, but not the obligation, to purchase the shareholder's stock at a price based on a formula. If the corporation did not timely exercise the option, then the other shareholders had the same option.

On March 12, 2015, the Debtor filed his chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Washington. He valued his interest in Softbase at $5,000. He did not schedule the Buy-Sell Agreement as an executory contract in Schedule G.

The bankruptcy court confirmed the Debtor's amended chapter 13 plan on June 3, 2015. The form plan provides blanks for the debtor to list assumed and rejected contracts, but the Debtor did not complete either space.

Mr. Dorr received notice of the bankruptcy filing as one of the Debtor's unsecured creditors. The Debtor did not send notice of his bankruptcy filing to Softbase or the Minority Shareholders. Neither Softbase nor the other shareholders (Mr. Dorr and the Minority Shareholders) exercised an option to purchase the Debtor's stock.

A year and a half later, on December 16, 2016, the Minority Shareholders filed a motion seeking relief from the automatic stay ("Motion for Relief"). They argued that the Debtor's bankruptcy filing was a "terminating event" that triggered the purchase options in the Buy-Sell Agreement. They claimed that

3

they only discovered the Debtor's bankruptcy case on November 18, 2016, when an inspection of Softbase's records revealed the bankruptcy. Because Softbase did not exercise its right to purchase the Debtor's stock, the Minority Shareholders argued that they were entitled to purchase the Debtor's shares.

The Minority Shareholders contended that cause existed to lift the stay because their rights under the Buy-Sell Agreement were unaffected by the Debtor's bankruptcy. They argued that the Buy-Sell Agreement was an executory contract within the meaning of § 365(a) and, because the Debtor did not accept or reject the Buy-Sell Agreement in his plan, "the Agreement rode-through Debtor's bankruptcy unaffected." They argued that the ipso facto provision (that triggered the option rights upon the Debtor's bankruptcy filing) was enforceable.

Alternatively, the Minority Shareholders argued that the shares were not property of the Debtor's estate and were not subject to the automatic stay because the confirmed chapter 13 plan did not address the Buy-Sell Agreement.

The Debtor opposed the motion. He argued that if he lost his Softbase stock, his employment would terminate and he would have no income with which to fund his plan. He also contended that the thirty-day period for the Minority Shareholders to exercise the purchase option had expired because Softbase had notice of his bankruptcy as of April 2015.[2] Finally, he argued that the Buy-Sell Agreement is not an executory contract under

---

[2] The bankruptcy court did not address this argument because it decided the case on other grounds. The parties do not contend that the bankruptcy court erred in that respect.

4

§ 365 because the Minority Shareholders failed to exercise their purchase option, which is the only feature of the Buy-Sell Agreement that would give rise to a performance obligation and make it an executory contract.

At the hearing on the Motion for Relief, the chapter 13 trustee sided with the Debtor and expressed concern that granting the requested relief would imperil the Debtor's ability to fund his plan.

After receiving post-hearing briefing, the bankruptcy court denied the Motion for Relief. The court held that the Buy-Sell Agreement was not an executory contract under the so-called "Countryman" definition. As we explain below, a contract is "executory" under that definition only if, as of the petition date, all parties to the contract owe duties that, if not performed, would constitute a material breach excusing the other parties' duty to perform. Applying Texas law, the court held that no breach of any of the parties' outstanding obligations as of the petition date would have constituted a material breach.

The court also held that the Bankruptcy Code barred enforcement of the ipso facto provision of the Buy-Sell Agreement. Finally, it was "concerned that Mr. Eutsler's employment may be in jeopardy if he was forced to sell his interest in the company. Mr. Eutsler's employment income is necessary to make his Chapter 13 Plan payments."

The Minority Shareholders filed a timely motion to reconsider the ruling on the Motion for Relief ("Motion for Reconsideration"), and the bankruptcy court denied it. The Minority Shareholders then filed a timely notice of appeal from

5

the orders denying the Motion for Relief and the Motion for Reconsideration.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court abused its discretion in denying the Motion for Relief.

(2) Whether the bankruptcy court abused its discretion in denying the Motion for Reconsideration.

## STANDARDS OF REVIEW

The question whether a particular contract is "executory" under § 365 is a question of fact, Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.), 139 F.3d 702, 706 n.13 (9th Cir. 1998) (hereinafter "In re Helms Constr.") (en banc),[3] which we review for clear error, Honkanen

---

[3] The case law on this point in this circuit is inconsistent. Helms Construction states that the question of "executoriness" is a question of fact, although it does so in a footnote with no supporting citation. But in two prior decisions which Helms Construction did not cite, the Ninth Circuit held that "[d]eterminations regarding the executory nature of a contract are conclusions of law that this court reviews de novo." McDonald's Corp. v. Rincon E., Inc. (In re Rincon E., Inc.), 24 F.3d 248, 1994 WL 140430, at *1 (9th Cir. Apr. 15, 1994) (table); Aslan v. Sycamore Inv. Co. (In re Aslan), 909 F.2d 367, 369 (9th Cir. 1990). To compound the confusion, the Ninth Circuit affirmed an unpublished decision of this Panel that cited and followed Aslan's standard of review but did not mention the subsequent decision in Helms Construction. Olson v. Bay Area Foreclosure Invs., LLC (In re Olson), BAP No. EC-05-1368-SJB, 2006 WL 6811004, at *4 (9th Cir. BAP Nov. 21, 2006), aff'd, 276 (continued...)

6

v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011). A finding of fact is clearly erroneous if it is illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 715 (9th Cir. 2003).

"A bankruptcy court's determinations regarding stay relief are reviewed for an abuse of discretion." Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 915 (9th Cir. BAP 2011) (citing Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009)).

Similarly, we review for abuse of discretion a bankruptcy court's denial of a motion for reconsideration. See Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010); Tennant v. Rojas (In re Tennant), 318 B.R. 860, 866 (9th Cir. BAP 2004).

To determine whether the bankruptcy court has abused its

---

[3](...continued)
F. App'x 641 (9th Cir. 2008). In this decision, we are compelled to follow Helms Construction, the Ninth Circuit's most recent en banc pronouncement on this issue, and to treat as a question of fact the determination whether a contract is executory.

7

discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc). "If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion." USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 887–88 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1262).

**DISCUSSION**

The Minority Shareholders' argument has three steps: first, the Buy-Sell Agreement was an executory contract; second, because the Debtor neither assumed nor rejected it, the Buy-Sell Agreement "rode through" the bankruptcy unaffected; and third, the automatic stay no longer precluded the Minority Shareholders from enforcing it. Neither party disputes the second point. With respect to the third point, the Minority Shareholders argued that cause existed to lift the stay solely because the Buy-Sell Agreement rode through the bankruptcy unaffected; conversely, they conceded that, if the Buy-Sell Agreement was not an executory contract and therefore could not "ride through," cause to lift the stay did not exist. Thus, our analysis turns on whether the Buy-Sell Agreement is an executory contract. We hold

8

that the bankruptcy court was correct under controlling Ninth Circuit law.[4]

**A. The bankruptcy court did not clearly err in finding, as a matter of fact, that the Buy-Sell Agreement is not an executory contract.**

The bankruptcy court found that the Buy-Sell Agreement was not an executory contract. This factual determination was not clearly erroneous.[5]

The bankruptcy court correctly held that the Ninth Circuit has adopted Professor Countryman's definition of an executory contract: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973); see In re Helms Constr., 139 F.3d at 705 ("An executory contract is one 'on which

_____

[4] We explain in footnotes why we think the court of appeals should revisit some of those issues, including the definition of "executory contract" in general and specifically whether an option contract such as the Buy-Sell Agreement is an executory contract.

[5] The bankruptcy court made this decision in ruling on a stay relief motion. Ordinarily, bankruptcy courts refrain from making merits decisions in that procedural context. In re Veal, 450 B.R. at 914 ("[A] creditor's claim or security is not finally determined in the relief from stay proceeding.") (citing Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740-41 (9th Cir. 1985) ("Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing.")). But any challenge on this ground is waived because no party raised it.

9

performance remains due to some extent on both sides.'").[6]

The bankruptcy court correctly held that the materiality of the parties' remaining obligations depends on whether, under applicable state law, one party's nonperformance would excuse the other party's obligation to perform. Hall v. Perry (In re Cochise Coll. Park, Inc.), 703 F.2d 1339, 1348 n.4 (9th Cir. 1983). The bankruptcy court properly looked to Texas law, because the Buy-Sell Agreement specified that it was "made pursuant to and shall be construed under the laws of the state of Texas" and was predominately signed in Texas, see Ulrich v. Schian Walker, P.L.C. (In re Boates), 551 B.R. 428, 434 (9th Cir. BAP 2016), and the court accurately recited the Texas law of materiality.

---

[6] Most courts follow the Countryman definition, but some decisions adopt a more flexible approach. See, e.g., Chattanooga Mem'l Park v. Still (In re Jolly), 574 F.2d 349, 351 (6th Cir. 1978) ("[D]efinitions [such as Countryman's] are helpful, but do not resolve this problem. The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act."). A very recent law review article makes a powerful argument in favor of a "modern contract approach" to executory contracts. Under that approach, all contracts with any unperformed obligation on either side, material or not, are "executory contracts" under § 365. Jay Lawrence Westbrook & Kelsi Stayart White, The Demystification of Contracts in Bankruptcy, 91 Am. Bankr. L.J. 481 (2017). The alternative approaches have much to recommend them; the Countryman definition turns on factors that have little if anything to do with the underlying policies of bankruptcy law and produce anomalous results in some cases. But neither party to this appeal challenges Helms Construction, and we could not disregard or overrule it even if they asked us to do so.

10

Further, the bankruptcy court correctly ruled that whether a contract is "executory" is a question of fact, both under the Bankruptcy Code, In re Helms Constr., 139 F.3d at 706 n.13, and under Texas law, Hudson v. Wakefield, 645 S.W.2d 427, 430 (Tex. 1983).[7]

The bankruptcy court correctly applied these principles to the Buy-Sell Agreement. The Ninth Circuit has held that "a paid-for but unexercised option" is typically not an executory contract, but that other kinds of options may be executory. In re Helms Constr., 139 F.3d at 705.

> [W]e look to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform. **Performance due only if the optionee chooses at his discretion to exercise the option doesn't count unless he has chosen to exercise it.** An option may on occasion be an executory contract, for instance, where the optionee has announced that he is exercising the option, but not yet followed through with the purchase at the option price.
>
> The question thus becomes: At the time of filing, does each party have something it must do to avoid materially breaching the contract? Typically, the answer is no; the optionee commits no breach by doing nothing.

Id. at 706 (emphasis added).[8]

In the present case, the Debtor's obligation to sell the stock and the Minority Shareholders' obligation to pay for it

---

[7] See n.3 supra.

[8] The advocates of the modern contract approach would treat LLC operating agreements (which are similar in many respects to the Buy-Sell Agreement in this case) and options in general as executory contracts. Westbrook & White, supra n.6, at 503-06, 511-13. This approach has substantial appeal, but we are not writing on a blank slate. Instead, we must follow Helms Construction, which holds otherwise.

11

were (when the Debtor filed his bankruptcy petition) contingent on the Minority Shareholders' future decision to exercise the option. Therefore, under Helms Construction, those obligations don't count. The only obligations which the parties owed to each other at the petition date were the obligation to give notice of the bankruptcy filing and any voluntary or involuntary assignment, and obligations not to compete with or disparage Softbase or encumber the stock. The bankruptcy court held that a breach of these provisions might justify an award of damages or injunctive relief but would not defeat the purpose of the Buy-Sell Agreement or justify the other party's suspension of performance. See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 199 (Tex. 2004); Hernandez v. Gulf Grp. Lloyds, 875 S.W.2d 691, 692 (Tex. 1994).

Under binding Ninth Circuit precedent, we review this aspect of the court's decision for clear error. In re Helms Constr., 139 F.3d at 706 n.13. Neither party argued that the facts were in dispute or requested an evidentiary hearing. Although other judges might reach the opposite conclusion on the same or similar facts,[9] we cannot say that the bankruptcy court clearly erred.

---

[9] The Buy-Sell Agreement prohibited the Debtor from selling any of his shares to a third party without first offering them to Softbase and the Minority Shareholders. If the Debtor breached that obligation and secretly sold half of his shares to a third party without giving notice to his fellow shareholders, and one of the other shareholders later tried to sell his stock, some judges might find that the Debtor's prior breach of the Buy-Sell Agreement excused the other shareholder's obligation to sell to the Debtor. But, although it is a close question, we cannot say that the bankruptcy court's contrary finding rises to the level of clear error.

12

The Minority Shareholders urge us to follow In re Parkwood Realty Corp., 157 B.R. 687, 690 (Bankr. W.D. Wash. 1993), in which the bankruptcy court held that a shareholders agreement including the option to repurchase stock was an executory contract because "at the very least, upon Parkwood Lakes' decision to exercise its repurchase rights under the Shareholders Agreement, the debtor is required to turn over its stock, and Lakes is required to pay the purchase price." However, Parkwood was decided before the Ninth Circuit held, in Helms Construction, that performance obligations contingent on the exercise of an option "do not count."

The Minority Shareholders also argue that this case is similar to In re RoomStore, Inc., 473 B.R. 107 (Bankr. E.D. Va. 2012), which held that a buyback option and negative and affirmative covenants rendered the subject agreement executory. However, RoomStore explicitly rejected the Ninth Circuit authority by which we are bound: "I decline to follow the line of authority of the Helms Construction decision of the Ninth Circuit and cases following it." Id. at 114. Moreover, RoomStore did not consider the materiality of the ongoing obligations, nor did it apply Texas law.

Accordingly, the bankruptcy court did not clearly err in holding that the Buy-Sell Agreement was not an executory contract.

**B.   We do not decide whether the Buy-Sell Agreement has "ridden through" the bankruptcy case.**

The second step of the Minority Shareholders' argument is that, because the Debtor's confirmed chapter 13 plan neither

13

assumed nor rejected the Buy-Sell Agreement, it has "ridden though" the bankruptcy case such that the Minority Shareholders could enforce it. This is consistent with our precedents. Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.), 371 B.R. 412, 424 (9th Cir. BAP 2007) (holding that, "where there is no breach or default in an executory contract as of the commencement of the case, the contract remains in force unless it is rejected and, if not rejected, 'passes with other property to the reorganized' debtor") (quoting Consol. Gas Elec. Light & Power Co. v. United Rys. & Elec. Co., 85 F.2d 799, 805 (4th Cir. 1936)). The Debtor did not challenge this assertion and the bankruptcy court accepted it without discussion. Therefore, any argument to the contrary has been waived.[10]

///

///

///

_____

[10] We express no opinion on the question whether a debtor may modify a chapter 13 plan to provide for the assumption or rejection of a previously omitted executory contract. Section 365(d)(2) provides that, in a chapter 13 case, "the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan" or an earlier date set by the court. But this must be read in conjunction with § 1329, which broadly authorizes post-confirmation modifications of chapter 13 plans. That section does not specifically mention the assumption or rejection of executory contracts. See Oseen v. Walker (In re Oseen), 133 B.R. 527, 529 n.1 (Bankr. D. Idaho 1991). It does, however, permit amendments to "increase or reduce the amount of payments on claims of a particular class provided for by the plan," § 1329(a)(1), and assumption or rejection of a contract often changes the amount distributed to the other party to the contract. (In fact, if assumption or rejection did not change the creditors' distributive rights, assumption or rejection would probably be a meaningless gesture.)

14

**C. The Minority Shareholders concede that, if the Buy-Sell Agreement is not executory, cause to lift the automatic stay did not exist.**

The third step of the Minority Shareholders' argument is that the bankruptcy court should have lifted the automatic stay to permit them to enforce the Buy-Sell Agreement. But they take the position that, if the Agreement is not an executory contract, the ipso facto provision is not enforceable and there is no reason to lift the automatic stay: "Appellants do not dispute that § 541 would preclude enforcement of the Agreement if it were non-executory because the 'ride-through' doctrine only applies to executory contracts." Given our determination that the Buy-Sell Agreement is not an executory contract, we need not reach the question whether the bankruptcy court should have lifted the stay.

**D. The bankruptcy court did not abuse its discretion in denying the Motion for Reconsideration.**

The bankruptcy court did not err when it denied the Minority Shareholders' Motion for Reconsideration. There were no "extraordinary circumstances," Buck v. Davis, 137 S. Ct. 759, 777 (2017), that would warrant relief under Civil Rule 60(b)(6), made applicable in bankruptcy by Rule 9024. Nor was there any newly discovered evidence, clear error, intervening change in the applicable law, or other circumstance that would justify relief under Civil Rule 59(e), made applicable in bankruptcy by Rule 9023. Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). The bankruptcy court did not abuse its discretion under either of these rules.

///

15

**CONCLUSION**

The bankruptcy court did not err in denying the Motion for Relief and Motion for Reconsideration.  Accordingly, we AFFIRM.