**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>GIGA WATT, INC.,<br>　　　　　　Debtor. | BAP No. EW-20-1156-FBG<br><br>Bk. No. 2:18-bk-03197 |
| JUN DAM,<br>　　　　　　Appellant,<br>v.<br>MARK D. WALDRON, Chapter 11<br>Trustee,<br>　　　　　　Appellee. | MEMORANDUM<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington
Frederick P. Corbit, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Creditor Jun Dam challenges chapter 11[1] trustee Mark D. Waldron's

("Trustee") sale of certain assets to a third party. This appeal is limited to

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

the order denying Mr. Dam's motion for reconsideration of the sale order. We AFFIRM.

## FACTUAL BACKGROUND

Giga Watt Inc. owned the "Giga Watt Project," which consisted of facilities built (and yet to be built) in eastern Washington. The facilities included small buildings, called "pods," that are equipped to house and provide electricity to powerful computers called "cryptocurrency miners" or just "miners." "Cryptocurrency mining" is "the complex process in which computers solve a complicated math puzzle to win a stack of virtual currency . . . ." Paul Roberts, *This is What Happens When Bitcoin Miners Take Over Your Town*, Politico Magazine, Mar./Apr. 2018, https://www.politico.com/magazine/story/2018/03/09/bitcoin-mining-energy-prices-smalltown-feature-217230 (last visited October 14, 2020). The miners also maintain the distributed ledgers that keep track of ownership of cryptocurrency. *See* Darren J. Sandler, *Citrus Groves in the Cloud: Is Cryptocurrency Cloud Mining A Security?*, 34 Santa Clara High Tech. L.J. 250, 253-55 (2018).

Giga Watt raised funds by selling "WTT tokens" in what it referred to as an "initial coin offering." Giga Watt told investors that a "WTT Token is an Ethereum token representing the right to use the Giga Watt processing center's capacity, rent-free for 50 years, to accommodate 1 Watt's worth of mining equipment power consumption." Basically, Giga Watt promised to

2

provide space, electrical power, cooling, and maintenance for miners that (at least nominally) belonged to the token holders. Token holders could provide their own miners or they could buy miners from Giga Watt's Singapore-based partner.

Mr. Dam purchased 1,025,660 WTT tokens for approximately $1.03 million. At oral argument, he acknowledged that he did not purchase or provide any miners for installation in any of Giga Watt's facilities.

About a year later, the value of digital currencies dropped dramatically and the cost of electricity increased in eastern Washington, diminishing the profitability of cryptocurrency mining. Giga Watt's business collapsed, and it filed a chapter 11 petition. Later, the Trustee was appointed.

Mr. Dam filed a proof of claim for $5,391,720.37, based on his projection of his lost profits over the fifty-year token period.

The Trustee filed a motion ("Sale Motion") to sell the so-called TNT Facility, including certain miners located there. The proposed buyer was EcoChain, Inc. The sale was to be free and clear of liens. The purchase price was $200,000, subject to overbidding.

The Non-Profit Creditors' Committee of WTT Token Holders and Miners, of which Mr. Dam was a member, objected to the proposed sale on multiple grounds.

After a hearing, the bankruptcy court approved the sale agreement

between the Trustee and EcoChain by order entered May 19, 2020 ("Sale Order"). It found that "EcoChain is purchasing the Purchased Assets in good faith within the meaning of 11 USC § 363(m) and EcoChain is entitled to the protections of 11 USC § 363(m)."

No one sought or obtained a stay of the Sale Order. The sale closed shortly after the court entered the Sale Order.

Seventeen days after the court entered the Sale Order, Mr. Dam filed a motion for reconsideration under Rule 9024 ("Motion for Reconsideration") and an adversary complaint[2] against the Trustee. The court denied the Motion for Reconsideration by order entered on June 18, 2020 ("Reconsideration Order").

Mr. Dam filed a notice of appeal on June 25, 2020, thirty-seven days after entry of the Sale Order and seven days after entry of the Reconsideration Order. The notice of appeal identified only the Sale Order as the order on appeal.

The Trustee has moved this Panel to dismiss the appeal, arguing that we lack jurisdiction to review the Sale Order because neither the notice of appeal nor the Motion for Reconsideration was filed within fourteen days of the order.

---

[2] The complaint against the Trustee and his attorneys asserted breach of fiduciary duty, negligence, and unjust enrichment in the sale of the TNT Facility. The bankruptcy court dismissed the adversary proceeding. Mr. Dam appealed the dismissal order to the district court, where it is pending.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(N). We have jurisdiction under 28 U.S.C. § 158 to review the Reconsideration Order.

### A.    Timeliness

The Trustee's Motion to Dismiss asserts that Mr. Dam's appeal was untimely. We agree in part.

An appeal from a final bankruptcy court order must be filed within fourteen days of entry of the order. *See* Rule 8002(a). The deadline for filing an appeal is mandatory and jurisdictional. *See Browder v. Dir., Dep't of Corrs.*, 434 U.S. 257, 264 (1978); *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 306 (9th Cir. 1990).

Rule 8002(b) tolls the time for filing an appeal if a party files a motion to alter or amend the judgment under Rule 9023 or a motion for relief under Rule 9024 within fourteen days after the judgment is entered. Rule 8002(b)(1)(B), (D). An untimely motion for reconsideration does not extend the time to file a notice of appeal. *Preblich v. Battley*, 181 F.3d 1048, 1057 (9th Cir. 1999).

The Sale Order was a final, appealable order. *See In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940, 956 (C.D. Cal. 2019) ("[O]rders approving a sale  of a debtor's property . . . are considered final decisions and immediately appealable." (citation and quotation marks omitted)).

Mr. Dam did not file a notice of appeal or tolling motion within fourteen days. Rather, he filed the Motion for Reconsideration seventeen days after the court entered the Sale Order. Thus, the Motion for Reconsideration did not toll the time for Mr. Dam to file an appeal from the Sale Order, and he was too late to appeal the Sale Order. *See* Rule 8002(a).[3]

The notice of appeal was filed within fourteen days of the Reconsideration Order. But Mr. Dam did not designate the Reconsideration Order in his notice of appeal, contrary to Rule 8003(a)(3)(B). Nevertheless, we will construe the notice of appeal as encompassing the Reconsideration Order. Even if an order "does not appear on the face of the notice of appeal," we are to consider: "(1) whether the intent to appeal a specific judgment can be fairly inferred and (2) whether the appellee was prejudiced by the mistake." *Le v. Astrue*, 558 F.3d 1019, 1022-23 (9th Cir. 2009) (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 414 (9th Cir. 2003)). "In determining whether intent and prejudice are present, we consider first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue." *Id.* at 1023 (quoting *Meehan v. Cty. of L.A.*, 856 F.2d 102, 105 (9th Cir. 1988) (quotation marks omitted)).

---

[3] Mr. Dam argues on appeal that the Motion for Reconsideration was timely under Civil Rule 60(b)(2) for excusable neglect because the postal service delivered his filing late. But neglect cannot excuse his untimely notice of appeal. *See* Rule 8002(d)(2)(B).

Mr. Dam has briefed the issues concerning the denial of the Motion for Reconsideration, and the Trustee had a fair opportunity to respond. Because it is clear that Mr. Dam intended to appeal the Reconsideration Order, we exercise our discretion to review it.

In short, we lack jurisdiction to review the Sale Order and will review only the Reconsideration Order.

## B. Statutory mootness

The Trustee argues that this appeal is statutorily moot under § 363(m). "We cannot exercise jurisdiction over a moot appeal." *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014).

Section § 363(m) provides:

> reversal or modification on appeal of an authorization under [§ 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and such sale or lease were stayed pending appeal.

*See Paulman v. Gateway Venture Partners III, LP (In re Filtercorp, Inc.)*, 163 F.3d 570, 576 (9th Cir. 1998) (When a "sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal.").

Mr. Dam did not seek a stay pending appeal. The bankruptcy court found that "EcoChain is purchasing the Purchased Assets in good faith within the meaning of 11 USC § 363(m) and EcoChain is entitled to the

7

protections of 11 USC § 363(m)." Mr. Dam does not challenge the finding of good faith.[4]

Rather, Mr. Dam argues that the appeal is not statutorily moot because the sale was made free and clear of his possessory rights as a lessee under § 365(h). He relies on *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. BAP 2008), where we "conclude[d] that § 363(m) does not apply to lien-stripping under § 363(f)." *Id.* at 35.

We are bound to follow our precedent in *PW, LLC*. Therefore, this appeal is not statutorily moot.[5]

## ISSUE

Whether the bankruptcy court abused its discretion in denying the Motion for Reconsideration.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's ruling

---

[4] At oral argument, Mr. Dam argued that EcoChain knew of the token holders' asserted rights. EcoChain's mere knowledge of a dispute of ownership does not establish its lack of good faith. *See Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002) ("'Good faith' is a factual determination to be reviewed for clear error and can be defeated by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" (quoting *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992))).

[5] At oral argument, the Trustee asserted that this appeal is equitably moot. But equitable mootness only applies if (among other factors) the bankruptcy court could not grant "effective and equitable relief" from an "uncontrollable situation" upon reversal of the order. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). We are not persuaded that these conditions exist here.

regarding a motion for reconsideration. *Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 235 (9th Cir. BAP 2017) (citations omitted). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

We review the Reconsideration Order under Civil Rule 60, made applicable in bankruptcy by Rule 9024, because Mr. Dam filed the Motion for Reconsideration after the fourteen-day period following the entry of the Sale Order. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001) ("A 'motion for reconsideration' is treated as a motion to alter or amend judgment under [Civil Rule] 59(e) if it is filed within [fourteen] days of entry of judgment. Otherwise, it is treated as a [Civil] Rule 60(b) motion for relief from a judgment or order." (citation omitted)).

To obtain relief under Rule 9024(b), the movant must show entitlement to one of the specified grounds for relief in Civil Rule 60(b):

(1) mistake, inadvertence, surprise, or excusable neglect;

9

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Civil Rule 60(b). Mr. Dam's burden is a heavy one. *See Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (movant must prove fraud under Civil Rule 60(b)(3) by clear and convincing evidence); *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (Civil Rule 60(b)(6) "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." (internal quotation marks omitted)).

"Ninth Circuit decisions have settled that Rule 60(b) is not a substitute avenue for appeal[.]" *Atkins v. Fiberglass Representatives, Inc. (In re Atkins)*, 134 B.R. 936, 939 (9th Cir. BAP 1992). A movant seeking relief under Civil Rule 60(b) after the appeal period has expired "is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment." *United Student*

10

*Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (9th Cir. BAP 2006). The movant cannot use a Civil Rule 60(b) motion to reargue points already made, or that could have been made, in dispute of the underlying motion. *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 55 (9th Cir. BAP 1998), *aff'd*, 205 F.3d 1350 (9th Cir. 1999).

Instead, the movant is limited to the narrow grounds enumerated in Civil Rule 60(b). "These grounds generally require a showing that events subsequent to the entry of the judgment make its enforcement unfair or inappropriate, or that the party was deprived of a fair opportunity to appear and be heard in connection with the underlying dispute." *In re Wylie*, 349 B.R. at 209.

On an appeal from a Civil Rule 60(b) order, we review an appellant's arguments "solely as they bear on the [bankruptcy court's] exercise of discretion on the Rule 60(b) motion. [Appellant] cannot prevail merely by showing that the [underlying judgment] . . . was erroneous." *Sec. & Exch. Comm'n v. Seaboard Corp.*, 666 F.2d 414, 415-16 (9th Cir. 1982).

Nearly all of Mr. Dam's arguments on appeal are ones that he could have made, or that the committee he chaired did make, in opposition to the Sale Motion. The bankruptcy court correctly refused to allow Mr. Dam to relitigate the Sale Order.

Mr. Dam argues that he was entitled to reconsideration under Civil Rule 60(b)(3) because the Trustee and his counsel had engaged in

misconduct and made misrepresentations to the court.

In order to prevail under Civil Rule 60(b)(3), Mr. Dam had to "prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). "[Civil Rule] 60(b)(3) require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings." *Casey*, 362 F.3d at 1260 (quoting *Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)).

The bankruptcy court properly rejected this argument because Mr. Dam offered only allegations, and no evidence, of misconduct. Based on this complete failure of proof, the court did not abuse its discretion in rejecting Mr. Dam's arguments concerning misconduct and fraud.

Mr. Dam also argues that the bankruptcy court violated his contractual rights because the Trustee could not sell the TNT Facility free of his rights as a lessee under § 365(h). Mr. Dam apparently thinks that this supposed error is a reason justifying relief under Civil Rule 60(b)(6). The argument fails, however, because there was no error. The Ninth Circuit has held that a lessor's trustee may sell property free and clear of a tenant's rights notwithstanding § 365(h), where § 363(f) permits a sale free and clear of the particular tenant's interest and the court provides adequate

12

protection for the tenant's interest. *Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re Spanish Peaks Holdings II, LLC)*, 872 F.3d 892, 900 (9th Cir. 2017). In its oral ruling, the court made clear that the sale proceeds would not be distributed until the court decided the token holders' administrative and ownership claims. Transferring interests from property to sale proceeds is a standard method of providing adequate protection, *see Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (9th Cir. BAP 2001) ("Typically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value."), and the court did not abuse its discretion in applying that method to Mr. Dam's interest.

Thus, Mr. Dam has not shown that the bankruptcy court abused its discretion when it denied his Motion for Reconsideration.

## CONCLUSION

For the foregoing reasons, we AFFIRM.